IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE<br><br>ESJ TOWERS INC<br><br>Debtor | CASE NO. 22-01676 (ESL)<br><br>CHAPTER 11 |
| OWEN WINCIG; REGINA WINCIG; KYLE WINCIG; RYAN WINCIG; TYLER WINCIG<br><br>Plaintiffs<br><br>vs.<br><br>FORTALEZA EQUITY PARTNERS 2, LLC; FORTALEZA HOSPITALITY L.L.C.; FORTALEZA ESJ, L.L.C.; ESJ TOWERS VACATION CLUB LLC; BLACK BRIAR PUERTO RICO LIMITED LIABILITY COMPANY; BLACK BRIAR ADVISORS LLC; and ESJ TOWERS, INC.<br><br>Defendants | ADVERSARY NO. 25-00006<br><br><br><br><br><br><br><br><br><br>FILED AND ENTERED 2/24/2026 |

OPINION AND ORDER

This adversary proceeding is before the court upon the motions to dismiss filed by Fortaleza Equity Partners 2, LLC ("Fortaleza Equity"), Fortaleza Hospitality L.L.C. ("Fortaleza Hospitality"), Fortaleza ESJ, L.L.C. ("Fortaleza ESJ"), and ESJ Towers Vacation Club LLC ("ESJ Towers Vacation Club", and jointly with Fortaleza Equity, Fortaleza Hospitality and Fortaleza ESJ, "**Fortaleza**") (dkt. #73, 74), Black Briar Puerto Rico LLC ("Black Briar PR") and Black Briar Advisors LLC ("Black Briar Advisors", and jointly with Black Briar PR, "**Black Briar**") (dkt. #86), and ESJ Towers, Inc. ("**Debtor**", and jointly with Fortaleza and Black Briar, the "**Defendants**") (dkt. #88, 92); Plaintiffs' oppositions thereto (dkt. #79, 99); Defendants' replies (dkt. #91, 103); and Plaintiffs' sur-reply (dkt. #107).

Also before the court are Plaintiffs' requests for entry of default against Black Briar and the Debtor (dkt. #82, 84).

-1-

FACTUAL AND PROCEDURAL BACKGROUND

(A)    The Bankruptcy Case, Bankr. Case No. 22-01676

1.    Plaintiffs Owen Wincig, Regina Wincig, Kyle Wincig, Ryan Wincig, and Tyler Wincig (jointly, **"Plaintiffs"**) are vacation club members pursuant to certain *ESJ Towers Vacation Club Owner Agreements* for Interval 1171-25 (the **"Agreement"**).

2.    On June 10, 2022, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. See Bankr. Case No. 22-01676, dkt. #1.

3.    On September 12, 2022, the U.S. Trustee for Region 21 filed a *Notice of Appointment of Unsecured Creditors' Committee* (Bankr. Case No. 22-01676, dkt. #111, 136, 719, 1004), appointing creditors who hold unsecured claims against the Debtor, including deeded timeshare owners and vacation club members, to the Unsecured Creditors Committee (**"UCC"**).

4.    On November 28, 2023, Debtor and Fortaleza Equity filed a *Joint Motion For Entry Of Sale Order: (A) Approving Asset Purchase Agreement And Sale Of Substantially All Of Debtor's Assets to the Purchaser, Pursuant To Sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 And 6006, Free And Clear of All Liens, Claims, Interests and Encumbrances, (B) Approving the Bidding Procedures to Solicit Higher and Better Offers and Select the Successful Bidder1, and (C) Approving the Form of Asset Purchase Agreement and Sale Order* (the **"Sale Motion"**, Bankr. Case No. 22-01676, dkt. #1317), as thereafter supplemented (Bankr. Case No. 22-01676, dkt. #1383, 1570).

5.    On February 22, 2024, the Debtor filed Schedules A and 1.2(b) to the *Asset Purchase Agreement* by and between Debtor and Purchaser (**"APA"**) "respectively consisting of a list of the ownership matrix of the deeded intervals at the ESJ Towers Condominium reflecting those owned by Debtor and

the list of Debtor's personal property, both to be sold by Debtor under the APA" (Bankr. Case No. 22-01676, dkt. #1570, p. 2).

6.    On March 12, 2024, the court entered an *Order Approving the Disclosure Statement* (Bankr. Case No. 22-01676, dkt. #1642). See also *Amended Disclosure Statement* (Bankr. Case No. 22-01676, dkt. #1270).

7.    On March 21, 2024, the court entered an *Order Approving The Amended Bidding Procedures To Solicit Higher And Better Offers And Select The Successful Bidder, For The Sale Of Debtor's Assets* ("**Amended Bidding Procedures Order**", Bankr. Case No. 22-01676, dkt. #1669), which states, in pertinent part, as follows:

> … Debtor shall file with the Court a schedule of cure obligations for the Assumed Contracts that are being made available to the Purchaser for potential assumption and assignment (a "Contract and Cure Schedule") and shall include the same with the service of the Cure Notice. The Contract and Cure Schedule shall include a description of each Assumed Contract to potentially be assumed and assigned under the APA and the Cure Costs, if any, necessary to cure such Assumed Contracts pursuant to Section 365 of the Bankruptcy Code. A copy of the Cure Notice, together with the Contract and Cure Schedule, shall be served by first-class mail to each of the nondebtor parties listed on the Contract and Cure Schedule, within five (5) days from entry of this Order. As soon as practicable after the receipt of a Qualified Bid (which is due by the Bid Deadline) seeking the assumption and assignment of an executory contract or unexpired lease of the Debtor not listed on the Contract and Cure Schedule (any such contracts, "Alternative Bidder Contracts"), Debtor shall file notice of such change with the Court and serve upon each affected counterparty of the applicable Alternative Bidder Contracts the Cure Notice and the amount of any Cure Costs associated with such Alternative Bidder Contracts.

> Any objections to any proposed Cure Costs for any Assumed Contract (any such objection, a "Cure Objection", and any such disputed costs, "Disputed Cure Costs") or to the provision of adequate assurance of future performance under any Assumed Contracts (an "Adequate Assurance Objection"), must be in writing and filed with the Court and served on the Notice Parties so as to be received no later than thirty (30) days after the Mailing Deadline; provided, however, counterparties to Alternative Bidder Contracts shall have until the start of the Sale Hearing to file and serve any objections to the assumption and assignment of an Alternative Bidder Contract.

> If no timely Cure Objection or Adequate Assurance Objection is filed and served with respect to an Assumed Contract or Alternate Bidder

Contract, then (a) the Cure Costs identified in the Contract and Cure Schedule with respect to the Assumed Contracts will be the only amounts necessary under Section 365(b) of the Bankruptcy Code to cure all monetary defaults under such Assumed Contracts or Alternate Bidder Contract if the Purchaser (or other Successful Bidder) ultimately decides to have the applicable Assumed Contract or Alternate Bidder Contract assumed and assigned to it; (b) the Successful Bidder will be deemed to have provided adequate assurance of future performance under the applicable Assumed Contract in accordance with Section 365(f)(2)(B) of the Bankruptcy Code if the Purchaser (or other Successful Bidder) ultimately decides to have the applicable Assumed Contract assumed and assigned to it; and (c) the party failing to timely file a Cure Objection or Adequate Assurance Objection shall be forever barred from asserting such objections against the Debtor, its estate or the Successful Bidder.

…

The failure of any objecting person or entity to timely file its objection to the Sale and related relief shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Motion, or to the consummation and performance of the Sale contemplated by the APA, including the transfer of the Sale Assets to the Successful Bidder free and clear of all liens, claims, encumbrances and other interests.

Id., pp. 3-6, ¶¶ 11-17, lines 26-7. See also *Second Amended Joint Motion Submitting Amended Bidding Procedures to Solicit Higher and Better Offers and Select the Successful Bidder, for the Sale of Debtor's Assets and Proposed Order Approving the Same*, Bankr. Case No. 22-01676, dkt. #1663.

8. On March 22, 2024, the Debtor filed a *Motion to Inform* (Bankr. Case No. 22-01676, dkt. #1674) whereby Debtor informs that "there is no 'Contract and Cure Schedule' [as outlined in the Amended Bidding Procedures Order] to be filed **as the only contracts which are being made available to the Purchaser for potential assumption and assignment are the contract with Liberty Cable Vision of Puerto Rico for telephone and cable services and those with vacation club members as to which there is no cure obligations**" (id., ¶ 2) (boldface added).

9. In accordance with the Amended Bidding Procedures Order, the approved Sale Notice was published in two newspapers of general circulation in Puerto Rico, *El Vocero* and *El Nuevo Dia*, and served on the UCC, *inter alia*. See *Amended Motion to Inform*, Bankr. Case No. 22-01676, dkt. #1678. The approved

Sale Notice states that any objection to the Sale Motion, including the objection to the proposed assumption and assignment of Assumed Contracts, or adequate assurance of future performance, shall be made by the applicable objection deadline.

10. On May 21, 2024, after various procedural events and negotiations between the Debtor and objecting parties[1], the court entered an *Order Confirming The Second Amended Chapter 11 Plan, As Supplemented* (**"Confirmation Order"**, Bankr. Case No. 22-01676, dkt. #1838), which states in pertinent part as follows:

(AA) *Executory Contracts and Unexpired Leases.* The Debtor has exercised its business judgment in determining whether to assume and assign or reject each of the Debtor's executory contracts and unexpired leases as set forth in Section 8.1 of the Plan. Each party to an executory contract or unexpired lease to be assumed by the Debtor and assigned to the Purchaser of the Debtor's assets has been provided with sufficient notice under the circumstances of such assumption. Each assumption and assignment, or rejection of an executory contract or unexpired lease as provided under Section 8.1 of the Plan shall be legal, valid, and binding upon the Debtor and all non-Debtor parties to such executory contract or unexpired lease.

…

10. *Sale of the Debtor's Assets to the Successful Bidder.* The … assumption by the Debtor of the contracts assumed during the Bankruptcy Case (the "Assumed Contracts"), **the assignment by the Debtor to the Successful Bidder of the Assumed Contracts, and the rejection by the Debtor of any executory contract that does not constitute Assumed Contracts is hereby approved pursuant to Sections 363, 365, 1123(a)(5), 1123(b)(4), and 1146(a) of the Bankruptcy Code,** and the Debtor and the Successful Bidder are hereby authorized and directed to take any and all necessary actions to consummate the sale of all of the Debtor's assets to be sold to the Successful Bidder.

Id., pp. 10-11, ¶ (AA); p. 15, ¶ 10 (boldface added).

11. Paragraphs 8.1 and 8.2 of the confirmed *Second Amended Plan As Supplemented for ESJ Towers, Inc.* (the **"Plan"**, Bankr. Case No. 22-01676, dkt. #1838-1) further state as follows:

8.1 REJECTION OF EXECUTORY CONTRACTS

---

[1] See, *e.g.*, *Minutes of [Confirmation] Hearing Held on May 15, 2024*, Bankr. Case No. 22-01676, dkt. #1826.

-5-

**All unexpired leases, executory contracts and other contracts set forth in Exhibit G to the Disclosure Statement**, which (i) have not expired by their own terms on or prior to the Confirmation Date, (ii) **have not been assumed and assigned to the purchaser of Debtor's assets, as indicated in the APA, prior to the Effective Date, shall be deemed rejected.**

8.2 REJECTION DAMAGE CLAIMS

If the rejection of an executory contract or unexpired lease pursuant to Section 8.1 hereof results in a claim for damages to the other party or parties to such contract or lease, **any claim for such damages, if not evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against Debtor,** or its properties or agents, s**uccessors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for Debtor or the Reorganized Debtor on or before forty-five (45) days following the Confirmation Date.** Debtor retains the right to object to any rejection damage claim filed in accordance with this Section.

Id., p. 23, ¶¶ 8.1-82 (boldface added).

12. On June 6, 2024, after various procedural events, the court held a hearing on the approval of the sale of Debtor's assets. The sale hearing minutes reflect that "Counsel for Debtor informed the court that the Proposed Sale Order is consensual and that there are no objections – either in writing or verbal – thereto. The court noted that there are no objections in the case docket. Consequently, Counsel for Debtor requested that the court approve the sale and the Proposed Sale Order in light of the confirmed Plan, which is predicated on the sale of Debtor's assets." Bankr. Case No. 22-01676, dkt. #1864, p. 2, lines 5-10. The sale hearing minutes also reflect that "Counsel for Fortaleza … stated that Fortaleza Equity Partners 2 will sign the Asset Purchase Agreement over to Fortaleza ESJ, a separate entity whose members and owners are the same as those of Fortaleza Equity … " (id., p. 2, lines 15-17).

13. On that same date, June 6, 2024, the court entered an *Order Approving Asset Purchase Agreement And Sale Of Debtor's Assets, Pursuant To Sections 363 And 365 Of The Bankruptcy Code, Free And Clear Of All Liens, Claims, Interests And Encumbrances* (the **"Sale Order"**, Bankr. Case No. 22-01676,

-6-

dkt. #1863) for the sale of Debtor's assets to Fortaleza Equity. Section 1.2(b) of the APA attached to the Sale Order states that "the Leases and Contracts on Schedule 1.2(a)" are "s[old], transfer[ed] and assign[ed] to the Purchaser" and "Assumed Contracts", as follows:

> 1.2   … Seller shall sell, transfer and assign to the Purchaser, and the Purchaser shall purchase and receive all of the Seller' right, title and interest in, to and under any and all of the assets, properties and rights of Seller (other than the Excluded Assets) related to or used or held for use in connection with the Realty as the same may exist as of the Closing (collectively, the "Sale Assets") free and clear of all Liens, mortgages, pledges, Encumbrances, liabilities, charges of every kind, and any interest thereto:
>
> …
>
> (b) the Leases and Contracts on **Schedule 1.2(a)** (the "Assumed Contracts")[2], being understood that the Purchaser shall not be required to assume any Lease or Contract and that any assignment of a Lease or Contract to the Purchaser by the Seller shall be at the sole discretion of the Purchaser and subject to approval of the Bankruptcy Court. Assumed Contracts shall include the Leases and the Contracts identified in Schedule 1.2(a), and any Leases or Contracts the Purchaser later advises the Seller it wishes to have assigned to the Purchaser at least five (5) Business Days prior to the Closing, notwithstanding the Lease or Contracts' initial exclusion from Schedule 1.2(a) **(which schedule shall be agreed upon by both Purchaser and Seller prior to Closing and attached to the final Agreement)**[.]

Bankr. Case No. 22-01676, dkt. #1863, p. 20 (boldface added). Section 2.1(b) of the APA clarifies that "[a]ll Leases and Contracts that are not Assumed Contracts" are "Excluded Assets", which are not "s[old], transfer[ed], or assign[ed] or convey[ed] … to the Purchaser". Id., p. 23. Lastly, Section 6.12(e) of the APA further states that "Schedule 1.2(b)[3] sets forth a list of all Assumed Contracts. In the event the Purchaser identifies a Contract not

---

[2] The court notes that the term "Assumed Contracts" also includes "those Contracts and Leases identified on **Schedule 1.2(b)**", which are "to be attached to the final Agreement, it being understood that the Purchaser shall not be required to assume any Contract or Lease and that any assignment of a Contract or Lease to Purchaser by the Seller shall be at the sole discretion of the Purchaser and subject to approval of the Bankruptcy Court. Assumed Contracts shall include the Leases, and any Contracts the Purchaser later advises the Seller it wishes to have assigned to the Purchaser [and the Purchaser accepts them], notwithstanding the Contracts initial exclusion from Schedule 1.2(b)." Id., p. 58 (boldface added).

[3] Ibid.

listed on Schedule 1.2(b), then the Seller shall amend Schedule 1.2(b) to include such Contracts. To the best of the Seller's knowledge all of the Assumed Contracts are valid, binding and enforceable in accordance with their terms, and are in full force and effect." Id., p. 35.

14. On June 11, 2024, Debtor filed a *Motion Submitting List of Assumed Vacation Club Membership Agreements* (the **"Assumed Contracts List"**), submitting Schedule 1.2(a) and "reflecting the … Vacation Club Members assigned by Debtor to [ESJ Tower Vacation Club, LLC] and assumed thereby, as to which there was no default to be cured by Debtor." Bankr. Case No. 22-01676, dkt. #1879, ¶ 7; dkt. #1882, ¶ 7 (correcting name of assignee). See also dkt. #76, p. 3, fn. 1 (correcting name of assignee). Interval 1171-25 is not included in the Assumed Contracts List. See Bankr. Case No. 22-01676, dkt. #1879, 1882.

15. On May 28, 2025, the court granted as unopposed the *Approved Post-Confirmation Modification of Confirmed Chapter 11 Plan, as Supplemented* (the **"PCM"**) jointly filed by the Debtor and the UCC. See Bankr. Case No. 22-01676, dkt. #2003, 2011. The court notes that the PCM does not alter the portions of the Plan or Confirmation Order relevant here.

16. The record of the bankruptcy case does not reflect that Plaintiffs filed proofs of claim. See *Claims Register*, Bankr. Case No. 22-01676.

(B) The Adversary Proceeding, Adv. Proc. No. 25-00006

17. On January 30, 2025, Plaintiffs filed an adversary proceeding (dkt. #1) against the Defendants. Fortaleza and Black Briar filed motions to dismiss the original complaint (dkt. #14, 15, 18), which were denied without prejudice to refiling the same as to the Amended Complaint, *infra*. See dkt. #57, 58, 59.

18. On April 29, 2025, Plaintiffs filed an Amended Complaint (dkt. #25)[4] alleging, *inter alia*, that Fortaleza and Black Briar "have obstructed

---

[4] Leave to file the amended complaint was granted as unopposed on May 30, 2025 (dkt. #24, 54).

payments from Plaintiffs and the use of valid and enforceable vacation club membership rights" following the sale (id., ¶ 23); that the sale "was premised on the understanding that timeshare memberships would not be disturbed by the sale … which was made clear by the [Amended Bidding Procedures Order]"; that "assuming, *in arguendo*, that the Court had not specifically provided for the preservation and continuation of vacation club memberships upon the sale, which is denied, the [Assumed Agreements List] is still irrelevant and has no bearing or effect over the membership rights of Plaintiffs" for it "does not [] comply with the statutory or procedural requirements of Section 365 for contract rejection … [or] with rejection of timeshare rights under 11 USCS 365(h)(2)" (id., ¶¶ 30-32); and lack of notice (id., ¶ 33).

The Amended Complaint pleads four (4) counts:

a.  First, judgment declaring that (a) the Agreement was not rejected; (b) the Assumed Agreements List is irrelevant and of no consequence to the rights of Plaintiffs; (c) the Agreement was not terminated; (d) the Agreement remains valid and enforceable at the time of the sale and to the filing of the Amended Complaint; (e) Defendants failed to comply with the Bidding Procedures Order and Sale Order by failing to preserve and respect Plaintiffs' rights under the Agreement, when the sale of assets was subject to the rights of vacation club members like Plaintiffs; (f) Defendants' attempts at cancellation or termination of Plaintiffs' rights are inconsistent with the Bidding Procedures Order and Sale Order's mandate to protect vacation club members' rights.

b.  Second, Defendants be held in civil contempt for willful violation of the Bidding Procedures Order, the Sale Order, and the Confirmation Order, and sanctions imposed, including daily fines, until compliance is restored; Fortaleza and the Black Briar be ordered to reinstate Plaintiffs' membership rights immediately, prohibited from obstructing payments from Plaintiffs, canceling or otherwise interfering with Plaintiffs' vacation club membership rights, and/or denying Plaintiffs access to their vacation club privileges in violation of the Agreement and orders.

c.  Third, Defendants acknowledge, respect, and/or reinstate Plaintiffs' vacation club membership rights, be permanently enjoined from obstructing payments from Plaintiffs, canceling or otherwise interfering with Plaintiffs' vacation club membership rights denying Plaintiffs access to their vacation club privileges in violation of the Agreement and orders

d.  Fourt, attorneys' fees and costs.

19.    On June 13, 2025, the ESJ Towers Vacation Club, Fortaleza ESJ, and Fortaleza Equity Partners, and Fortaleza Hospitality filed a *Motion to Dismiss Amended Complain*t pursuant to Fed. R. Civ. P. 12(b)(6) (dkt. #73) averring that "Club Membership Agreements not included in [the Assumed Contracts List] were … not assumed by Fortaleza ESJ [] as part of the Sale, and, thus, were deemed expressly rejected pursuant to the language of the Plan" (id., pp. 5-6), and that:

> Plaintiffs have not stated a claim against Fortaleza in which relief may be granted inasmuch as Fortaleza, as the Purchaser of Debtor's assets, did not assume Plaintiffs' Club Membership Agreements under the Sale and, thus, does not have any obligations to Plaintiffs regarding the rejection or whatever alleged breach of their Club Membership Agreements. The confirmation of the Sale is binding pursuant to Section 1141(a) and all prior obligations and rights of parties are extinguished and replaced by the Plan. Furthermore, the confirmation of the Plan constitutes *res judicata*, which precludes Plaintiffs from bringing any cause of action against Fortaleza regarding the supposed "non-rejection" of Plaintiffs' Club Membership Agreements and/or any allegations purporting to make Fortaleza responsible for any breach of alleged rights under such agreements. This Court should, therefore, dismiss all of Plaintiffs' claims to those effects as included in Counts I, II, III and IV of the Amended Complaint

Id., p. 7. Fortaleza further argues that the Assignment and Assumption Agreement by and between Fortaleza ESJ (as Assignor) and ESJ Tower Vacation Club (as Assignee) dated as of June 20, 2024 whereby the former assigned all rights and obligations of the Club Membership Agreements acquired by it under the APA to the latter (dkt. #75-1) did not include the Agreement for Interval 1171-25, ergo: Fortaleza did not acquire the same as part of the sale. Thus, any allegations regarding the supposed "non-rejection" of the Agreement as part of the Sale or the "invalidity" of Schedule 1.2(a), as well as allegations regarding Debtor's obligations thereunder, its terms, validity and/or enforceability and/or any breach of such agreements cannot be made against Fortaleza and, moreover, constitute *res judicata*.

20.   Also on June 13, 2025, Fortaleza Hospitality filed a *Motion to Dismiss Amended Complaint* pursuant to Fed. R. Civ. P. 12(b)(6) (dkt. #74), averring that it "is an entity formed on April 2024 that was not utilized for any business purposes until 2025", "was not part of the Main Case nor was it involved in the APA or the Sale and is not currently the owner of the Club Membership Agreements. To this effect, the Amended Complaint does not plead or allege anything specific or that could potentially be construed as an action or omission by Fortaleza Hospitality against Plaintiffs, especially given the fact that the entity is not operating." Id., p. 3.

21.   On July 14, 2025, Plaintiffs filed an *Opposition to Fortaleza's Motion to Dismiss Amended Complaint* (dkt. #79) objecting to the use of "insufficient, unauthenticated extrinsic evidence, and apparent controversies of fact … including as to the Assignment and Assumption Agreement" (id., p. 3), and stating that "vacation club memberships are not ordinary contracts to be assumed or rejected, but passed through the bankruptcy process undisturbed" (id., p. 8).

22.   The court ordered Fortaleza to file a reply, if any, to Plaintiffs' opposition. See dkt. #81.

23.   On June 15, 2025, Plaintiffs requested entry of default pursuant to Fed. R. Civ. P. 55 against Black Briar (dkt. #82) and Debtor (dkt. #84).

24.   On July 16, 2025, Black Briar filed a *Motion to Dismiss* pursuant to Fed. R. Civ. P. 12(b)(6) (dkt. #86) whereby Black Briar Advisors argues that pursuant to a Management Agreement by and between it and Debtor (dkt. #18-1), Black Briar Advisors' role was strictly administrative and operational; that the decisions concerning termination of timeshare memberships did not fall within the scope of "routine management" and solely Debtor's responsibility; and that "[a]ny actions taken after May 2024, including the termination of

-11-

timeshare memberships in or around June 2024, had absolutely nothing to do with Black Briar Advisors and cannot be attributed to them … because they had been terminated previously thereto" (dkt. #86, p. 6). In the alternative, the Management Agreement contains robust indemnification language which shields Black Briar Advisors from liability for actions performed within the scope of its duties, unless due to gross negligence or willful misconduct, neither of which is alleged. They also argued that Debtor is required to indemnify Black Briar Advisors for claims resulting from Debtor's failure to honor business arrangements or obligations existing before termination and any failure after termination by ESJ Towers to fulfill or correct operational or membership-related errors, and that Black Briar Advisors is an independent contractor. In turn, Black Briar Puerto PR argues it had not commenced operations when the alleged wrongful terminations of timeshare memberships occurred, hiring its first employees on June 12, 2024, one day after the closing of the sale. Black Briar PR alleges it does not have any contractual relationship with Plaintiffs, nor any duty (legal or fiduciary) to any of the timeshare owners during the relevant period of time.

25.   On July 18, 2025, the Debtor filed an *Opposition to Request for Entry of Default and Motion to Dismiss the Complaint* (dkt. #88, 92), whereby it argues inadvertent calendaring error and excusable neglect under Fed. R. Civ. P. 6(b)(1)(B) and joins Black Briar's motion to dismiss.

26.   On July 28, 2025, Fortaleza filed a *Reply to Plaintiffs' Opposition to Fortaleza's Motions[sic] to Dismiss the Amended Complaint* (dkt. #91) arguing that Plaintiffs failed to provide a response to the arguments of law raised in the motion to dismiss, to wit: "(1) that Fortaleza, as the Purchaser of Debtor's assets, did not assume Plaintiffs' Club Membership Agreements under the sale of the purchased assets as described in Docket No. 1838, p. 10 of the Main

-12-

Case and, thus, does not have any obligations to Plaintiffs regarding the rejection or whatever alleged breach of their Club Membership Agreements; (2) the confirmation of said sale is binding pursuant to Section 1141(a) and all prior obligations and rights of parties are extinguished and replaced by the Chapter 11 Plan (the "Plan"); and (3) the confirmation of the Plan constitutes res judicata, which precludes Plaintiffs from bringing any cause of action against Fortaleza regarding the supposed "non-rejection" of Plaintiffs' Club Membership Agreements and/or any allegations purporting to make Fortaleza responsible for any breach of alleged rights under such agreements or the bankruptcy process in general" (id., p. 3, ¶ 5).

27.  On August 18, 2025, Plaintiffs filed an *Omnibus Opposition to the Black Briar Defendants' Motion to Dismiss and to Debtor's Joinder and Sur-Reply to the Fortaleza Defendants' Reply* (dkt. #99) wherein they contend, *inter alia*, that (i) Black Briar's motion to dismiss refers to extrinsic documents and materials, the Management Agreement, that cannot be considered unless the motion is converted into one for summary judgment, (ii) the amended complaint specifically alleges that Plaintiffs were not listed or notified during the bankruptcy case or in the post-confirmation filings by Debtors, and (iii) Plaintiffs' claims do not rely on the terms or legal effect of the Assignment and Assumption Agreement; rather, they assert that their rights were violated irrespective of that document's content. Should the amended complaint be deemed insufficiently pleaded, Plaintiffs request leave to amend pursuant to Fed. R. Civ. P. 15(a)(2).

28.  On September 8, 2025, Black Briar filed a *Reply in Further Support of Motion to Dismiss* (dkt. #103) averring that the Management Agreement is central to Plaintiffs' theory of liability as to the duties and obligations allegedly assumed and breached by Black Briar Advisors. Black Briar also argues

that to the extent the Plaintiffs claim that the Management Agreement is not the source of the duties and obligations allegedly assumed and breached, then the amended complaint must nevertheless be dismissed as it fails to state with particularity what is the legal basis for holding that Black Briar owed a duty towards Plaintiffs, which could have ostensibly been breached by the conduct alleged in such amended complaint.

29.   On October 9, 2025, Plaintiffs filed a *Sur-Reply to BlackBriar Defendant's Reply in Further Support of Motion to Dismiss* (dkt. #107).

APPLICABLE LAW AND ANALYSIS

(A)   Entry of Default

As an introductory matter, the court will address Plaintiffs' request for entry of default against Black Briar and Debtor. Pursuant to Fed. R. Civ. P. 55(c), an entry of default can be set aside for "good cause". That standard is a "liberal one" based upon the policy justification that actions should be resolved on their merits. See Coon v. Grenier, 867 F.2d 73, 76 (1st Cir. 1989). Such an analysis also applies to the circumstance here, where the court is faced with a request for entry of default and the defendants have made an appearance. See Avci v. Brennan, 232 F. Supp. 3d 216, 218 (D. Mass. 2017).

The deadline by which to respond having been missed only by a few days, Black Briar and Debtor having appeared, admitted error, and filed motions to dismiss, the court concludes that there is good cause to deny entry of default. Plaintiffs' requests for entry of default (dkt. #82, 84) are thus DENIED, and the motions to dismiss allowed to be considered on the merits.

(B)   Motion to Dismiss Standard under Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) is made applicable to adversary proceedings through Fed. R. Bankr. P. 7012. In deciding a motion under Fed. R. Civ. P. 12(b)(6), the court must determine whether a complaint states a plausible

claim. "The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to assess the legal feasibility of a complaint, not to weigh the evidence which the plaintiff offers or intends to offer." In re Instituto Medico del Norte, Inc., 2021 WL 4944085, at *2, 2021 Bankr. LEXIS 2924, at *7 (Bankr. D.P.R. 2021); Lugo Alejandro v. Betancourt (In re Betancourt), 2021 WL 438858, 2021 Bankr. LEXIS 298 (Bankr. D.P.R. 2021); Vélez Arcay v. Banco Santander de P.R. (In re Vélez Arcay), 499 B.R. 225, 230 (Bankr. D.P.R. 2013), citing Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2nd Cir. 1984); Citibank, N.A. v. K-H Corp., 745 F. Supp. 899, 902 (S.D.N.Y. 1990).

Fed. R. Civ. P. 8(a)(2), applicable to adversary proceedings through Fed. R. Bankr. P. 7008, mandates complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Although detailed factual allegations are not required, the Rule does call for sufficient factual matter". Surita-Acosta v. Reparto Saman Inc. (In re Surita Acosta), 464 B.R. 86, 90 (Bankr. D.P.R. 2012). Therefore, to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, accepted as true, "state[s] a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556. The Twombly standard was further developed in Ashcroft v. Iqbal, 556 U.S. 622 (2009), advising lower courts that "determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft, 556 U.S. at 679. "In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying

pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id., at 679. In sum, allegations in a complaint cannot be speculative and must cross "the line between the conclusory and the factual". Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011). "[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011).

In Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012), the First Circuit established a two-step standard for motions to dismiss under Fed. R. Civ. P. 12(b)(6). Step one: isolate legal conclusions. Step two: take the complaint's well-pleaded (non-conclusory) allegations as true, drawing all reasonable inferences in favor of the plaintiff and determine if they plausibly narrate a claim for relief. See Pérez v. Rivera (In re Pérez), 2013 WL 1405747, at *3, 2013 Bankr. LEXIS 1561 (Bankr. D.P.R. 2013); Zavatsky v. O'Brien, 902 F. Supp. 2d 135, 140 (D. Mass. 2012).

"Simply because the court is hesitant to dismiss a claim in the early sta[g]es of litigation, however, does not mean that there are not circumstances where the court can and should act. Fed. R. Civ. P. 12(b)(6) weeds out those allegations that, even with further factual development, will never grow into sustainable claims under the law." Arruda v. Sears, Roebuck & Co., 273 B.R. 332, 340 (D.R.I. 2002). As the First Circuit has stated, "in the menagerie of the Civil Rules, the tiger patrolling the courthouse gates is rather tame, but 'not entirely ... toothless.' " Correa v. Arrillaga, 903 F.2d 49, 52 (1st Cir.

-16-

1990), quoting Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).

Consideration of a motion to dismiss requires the court to assume the truth of all well-plead facts and give the benefit of all reasonable inferences therefrom. A complaint that states a claim plausible on its face survives a motion to dismiss. See Banco Santander P.R. v. P.R. Hosp. Supply, Inc. (In re P.R. Hosp. Supply, Inc.), 617 B.R. 181, 191 (Bankr. D.P.R. 2020).

(C)     Consideration of Extrinsic Evidence

At the motion to dismiss stage, "the Court may consider: [1] 'implications from documents' attached to or fairly 'incorporated into the complaint,' [2] 'facts' susceptible to 'judicial notice,' and [3] 'concessions' in a plaintiff's 'response to the motion to dismiss.' " Nieto-Vicenty v. Valledor, 984 F. Supp. 2d 17, 20 (D.P.R. 2013), quoting Schatz, 669 F.3d at 55-56. At the court's discretion, if it chooses to consider materials outside of the pleadings, a motion to dismiss should be converted to a motion for summary judgement under Fed. R. Civ. P. 56. See Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008).

Under certain "narrow exceptions," some extrinsic documents may be considered without converting a motion to dismiss into a motion for summary judgement. Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013), citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). These exceptions include "documents, the authenticity of which are not disputed by the parties; official public records; documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint." Freeman, 714 F.3d at 36, quoting Watterson, 987 F.2d at 3. "[I]t is well-established that in reviewing the complaint, we 'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached

to the complaint, without converting the motion into one for summary judgment.' " Clorox Co. P.R. v. Proctor & Gamble Com. Co., 228 F.3d 24, 32 (1st Cir. 2000), citing Watterson, 987 F.2d at 3-4). See also Schatz, 669 F.3d at 55-56, n. 3.

The (i) Assignment and Assumption Agreement (dkt. #75-1) and (ii) the Management Agreement (dkt. #18-1) do not fit into these enumerated categories. Accordingly, the court shall limit its evaluation of material outside the complaint, noting only the order of assignments, and shall not apply a summary judgment standard to the filings in this case. Consequently, this court takes judicial notice under Fed. R. Evid. 201 that the Debtor sold its assets to Fortaleza Equity pursuant to the APA, which Fortaleza Equity subsequently "sign[ed] … over to Fortaleza ESJ" (Bankr Case No. 22-01676, dkt. #1864). Fortaleza ESJ then assigned all rights and obligations to the vacation club membership agreements to ESJ Tower Vacation Club, LLC pursuant to the Assignment and Assumption Agreement (dkt. #75-1).

(D)    Discussion

Section 365(a) of the Bankruptcy Code allows a debtor in possession, subject to the court's approval, to assume or to reject a prepetition executory contract. See 11 U.S.C. § 365(a). The debtor-in-possession may make this decision at any time prior to the confirmation of the plan, unless the court orders otherwise upon request of the non-debtor contracting party. See 11 U.S.C. § 365(d)(2). Pursuant to Section 1123(b) of the Bankruptcy Code, a plan may, "subject to [11 U.S.C. § 365], provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected …". 11 U.S.C. § 1123(b)(2). This latitude allows the debtor-in-possession an opportunity to determine which of the prepetition

-18-

executory contracts are beneficial to the estate and which should be assumed or rejected.

The Bankruptcy Code has long furnished special protections to lessees or buyers of real property when the lessor or seller enters bankruptcy and seeks to reject the lease or purchase agreement as an executory contract. See 11 U.S.C. § 365(h)-(j). In 1984, the U.S. Congress extended these protections to owners of timeshare interests. See Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, §§ 401-404, 98 Stat. 333, 366-67 (1984). These protections, as pertinent to timeshare agreements, are summarized as follows:

> … when a bankrupt debtor seeks to reject a timeshare agreement as an executory contract, the timeshare owner has two options. If the timeshare owner is in possession or the term of the timeshare interest has commenced, he may remain in possession of his timeshare interest. 11 U.S.C. § 365(h)(2)(A)(ii), (i)(1). If he does so, he can set off any damages caused by the debtor's post-rejection nonperformance against any payments due to the debtor, including deferred purchase price installments and annual maintenance fees. Id. § 365(h)(2)(B), (i)(2)(A).

> As an alternative, the timeshare owner can treat the timeshare interest as terminated and file a claim for damages against the bankruptcy estate. Id. § 365(h)(2)(A)(i), (i)(1).

In re Plaza Resort at Palmas, Inc., 741 F.3d 269, 286 (1st Cir. 2014) (so noting) (Selya, J., dissenting).[5] See also Bankruptcy Code Manual § 365:68 (May 2025).

Here, pursuant to Paragraph 8.1 of the confirmed plan, "[a]ll unexpired leases, executory contracts and other contracts … which (i) have not expired by their own terms on or prior to the Confirmation Date, (ii) have not been assumed and assigned to the purchaser of Debtor's assets, as indicated in the

---

[5] In Plaza Resort, the majority decision of the Court of Appeal for the First Circuit discusses the formalities required for the creation of individual property rights under the Puerto Rico Timeshare and Vacation Club Act, 31 L.P.R.A. § 1251, et seq., (repealed by Act No. 204-2016, 31 L.P.R.A. §§ 1891-1907d, known as the "Puerto Rico Vacation Ownership Act"), and does not address timeshare agreements under the Bankruptcy Code. The dissenting judge, the Hon. Judge Selya, opined that the majority erred in determining that the intervals at issue constituted real property. In so doing, the dissenting judge also opined that the majority erred with respect to the broader question of the parties' rights in bankruptcy, particularly 11 U.S.C. § 365(h)(2) and (i), which allow a debtor to reject timeshare agreements and provide specific safeguards for timeshare buyers, summarized above.

APA, prior to the Effective Date, **shall be deemed rejected**." Bankr. Case No. 22-01676, dkt. #1838-1, p. 23, ¶ 8.1 (boldface added). Pursuant to Paragraph 8.2 of the confirmed plan, "if the rejection … results in a claim for damages … any claim for such damages, if not evidenced by a filed proof of claim, **shall be forever barred** and shall not be enforceable **against Debtor**, or its properties or agents, successors, **or assigns**, unless a proof of claim is filed with the Bankruptcy Court …" Id., ¶ 8.2 (boldface added).

The record does not reflect that the Agreement for Interval 1171-25 was formally assumed and/or assumed and assigned prior to plan confirmation or as part of the sale of Debtor's assets; that a proof of claim was timely filed by Plaintiffs in accordance with the terms of the confirmed plan; that Plaintiffs objected to either confirmation or the sale of Debtor's assets; or, that Plaintiffs petitioned the court for Debtor to assume or reject Interval 1171-25 within a specific time, or for adequate assurance of future performance. The record does reflect that both confirmation and the sale of Debtor's assets was consensual; that if unexpired leases, executory contracts and other contracts were not assumed and assigned prior to the closing of the sale, such agreement was deemed rejected under the terms of the Confirmation Order, the Plan, the Sale Order, and the APA. These facts, taken together, evince that Interval 1171-25 were deemed rejected under the terms of the confirmed plan, which has *res judicata* effect. See 11 U.S.C. § 1141(a).

To the extent Counts I, II, III, and IV seek relief against the Debtor in connection with the rejection of Interval 1171-25, which are barred under the Amended Bidding Procedures Order, Paragraph 8.2 of the Plan, the Confirmation Order, the Sale Order, and the APA, and the assets are no longer property of the Debtor or the bankruptcy estate, they fail to state a claim

for which relief may be granted under Fed. R. Civ. P. 12(b)(6). As such, Counts I, II, III, and IV are dismissed with respect to the Debtor.

The court will now address the relief requested against the non-debtor parties based on this court's prior orders, the Agreement, and the Puerto Rico Vacation Ownership Act. To the extent Count I seeks relief against (i) Fortaleza Equity, (ii) Fortaleza ESJ, and (iii) ESJ Tower Vacation Club in connection with the rejection of Interval 1171-25, which are barred under the Amended Bidding Procedures Order, Paragraph 8.2 of the Plan, the Confirmation Order, the Sale Order, and the APA, they fail to state a claim for which relief may be granted under Fed. R. Civ. P. 12(b)(6). As such, Count I is dismissed with respect to (i) Fortaleza Equity, (ii) Fortaleza ESJ, and (iii) ESJ Tower Vacation Club.

To the extent any remaining counts seek relief against non-debtor third-parties, namely (i) Fortaleza Equity, (ii) Fortaleza ESJ, (iii) ESJ Tower Vacation Club, (iv) Fortaleza Hospitality, (v) Black Briar PR, and (vi) Black Briar Advisors on account of alleged contractual or statutory vacation club membership rights under the Puerto Rico Vacation Ownership Act, this court is moved to exercise its discretion to permissively or discretionally abstain under 28 U.S.C. § 1334(c)(1). See In re Harland Corporation, 2025 WL 338052 (Bankr. D.P.R. 2025) (noting that abstention is appropriate where state law predominates). The effect or lack thereof of any remaining counts on the administration of the Debtor's bankruptcy estate and/or the confirmed plan also moves this court to abstain. The foregoing does not bar Plaintiffs from pursuing their claims against the non-debtor parties in accordance with Puerto Rico law.

CONCLUSION

For the reasons stated herein,

1. Counts I, II, III, and IV are dismissed against the Debtor under Fed. R. Civ. P. 12(b)(6);

2. Count I is dismissed with respect to (i) Fortaleza Equity, (ii) Fortaleza ESJ, and (iii) ESJ Tower Vacation Club under Fed. R. Civ. P. 12(b)(6);

3. The court abstains from hearing Count I asserted by and against non-debtor third parties under 28 U.S.C. § 1334(c)(1), that is, (i) Fortaleza Hospitality, (ii) Black Briar PR, and (iii) Black Briar Advisors; and

4. The court abstains from hearing Counts II, III and IV asserted by and against non-debtor third parties under 28 U.S.C. § 1334(c)(1), that is, (i) Fortaleza Equity, (ii) Fortaleza ESJ, (iii) ESJ Tower Vacation Club, (iv) Fortaleza Hospitality, (v) Black Briar PR, and (vi) Black Briar Advisors.

Judgment will be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 24th day of February 2026.

Enrique S. Lamoutte
United States Bankruptcy Judge

-22-